# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46354

RONALD RYAN BERRETT AND
LANIE BERRETT, husband and wife,

    Plaintiffs-Appellants,

v.

CLARK COUNTY SCHOOL DISTRICT
NO. 161,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Pocatello, September 2019 Term

Opinion Filed: December 6, 2019

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Bruce Pickett, District Judge.

The district court's order granting summary judgment is <u>reversed in part and affirmed in part</u>.

Thomsen Holman Wheiler, PLLC, Idaho Falls, for appellants. Jacob S. Wessel argued.

Hall Angell & Associates, LLP, Idaho Falls, for respondent. Ryan A. Jacobsen argued.

---

BRODY, Justice.

This case arises from the termination of Ryan and Lanie Berrett ("the Berretts") from their jobs with Clark County School District No. 161 (the "School District"), and raises issues regarding the "law of the case" doctrine, the Idaho Protection of Public Employees Act ("Whistleblower Act"), and wrongful termination in violation of public policy. After their terminations, the Berretts sued the School District, alleging that both of their terminations were in retaliation for Ryan Berrett reporting a building code violation to the School District's board of trustees (the "board"). The district court granted the School District's motion for summary judgment, finding that Ryan Berrett did not engage in a protected activity under the Whistleblower Act, and that Idaho's public policy does not extend to protect Lanie Berrett in a

1

termination in violation of public policy claim. In turn, the district court also denied the Berretts' motion for reconsideration. The Berretts timely appealed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Ryan Berrett

The School District hired Ryan Berrett to perform part-time maintenance work on its facilities in late September 2009. About ten months later, the School District hired him to serve as the district's maintenance supervisor. As maintenance supervisor, he maintained the School District's furnace system, which included the propane tank and equipment that supplied propane gas to the furnaces.

In January 2012, school staff members reported propane odors coming from the school's old gymnasium. Gayle Woods ("Woods"), the School District's business manager, notified the superintendent, David Kerns ("Kerns"), about the odors. Ryan Berrett also received reports of the odors. Kerns, upon learning of the odors, notified the board of the problem and started working with Ryan Berrett to identify and address the source of the odors. The chair of the board, Erin Haight-Mortensen ("Haight-Mortensen"), received regular updates from Kerns regarding the propane odors and attempts to service the problem. Ryan Berrett also provided the board with monthly updates on the problem.

The parties dispute who first contacted the service providers to identify the source of the propane odors. The School District maintained that Kerns first worked with the board to identify and contact propane service providers. Ryan Berrett, in contrast, asserted that he first reached out to service providers and remained the School District's point of contact throughout the repair efforts. Regardless of who made the first contact, the initial service calls made by both Sermon Service & Electric and High Plains Propane were unsuccessful in identifying the source of the odors.

Ryan Berrett continued to work with service providers throughout the spring of 2012 in an effort to address the odors. Eventually, service providers identified multiple problems in the propane system. First, the vaporizer that sat next to the main propane tank needed to be replaced. Ryan Berrett solicited a bid from Sermon Service & Electric ("Sermon") to replace the vaporizer in March 2012. Ryan Berrett updated Kerns and Haight-Mortensen about the vaporizer and accompanying bid. The cost of Sermon's repair estimate and Kerns' reaction to the estimate are both disputed. Ryan Berrett alleged that Sermon's bid estimated repair costs to be between

2

$60,000 and $100,000. Ryan Berrett alleged Kerns told him to "keep quiet" when he learned of the cost. Kerns disputed this statement, and asserted in an affidavit that he never told Ryan Berrett to "keep quiet." Rather, Kerns stated that he regularly communicated with the board regarding the status and cost estimates of repair work. Instead of just telling him to "keep quiet," Kerns stated that he told Ryan Berrett that the School District could not afford a $60,000–$100,000 repair, and that he would continue to solicit more affordable bids. Contrary to Ryan Berrett's affidavit, Kerns, Haight-Mortensen, and Woods all contended that Sermon's initial repair estimate was approximately $6,000–$7,000.

The only evidence of a service quote in the record, a March 12, 2012 quote from Sermon, does not contain a price estimate. Sermon representative Mike Holden ("Holden") prepared the quote, providing a summary of the propane issues facing the School District. In the quote, Holden stated that the School District's original plans called for an "18,000 gallon propane tank," and that the School District currently used a "5[,000] or 6[,]000 gallon" tank. Holden wrote that this under-sized "tank will not produce enough vapor" for the building, "causing many problems with equipment." To make up for the vapor deficiency, the propane system had been "adjusted for maximum pressure to maintain operation," which Holden did not believe would effectively maintain pressure throughout the system. Holden concluded the quote stating that "[a]ll equipment without proper gas pressure is unsafe," and that since July 2011, the existing "tank has not been legal and brought up to code."

The parties dispute the significance of Holden identifying a code violation in the final line of his quote. Ryan Berrett stated that when he gave Kerns the March 12, 2012 Sermon quote, it was the first time the School District discovered the propane issues constituted a code violation. The School District agreed that the propane problems constituted a code violation, but disputed the notion that the March 12, 2012 quote was the first identification of it. Kerns and Haight-Mortensen stated in affidavits that they were aware the propane leak was a building code violation upon discovery of propane odors in January 2012. However, the record contains two sets of affidavits from Kerns and Haight-Mortensen that differ on this fact. The first set of affidavits filed by Kerns and Haight-Mortensen in federal district court only contain statements that they knew of propane odors in January 2012. Those affidavits are silent on when, and if, they knew the propane problems were code violations. The second set of affidavits that were filed with the state district court in this case appear to add one line, in which Kerns and Haight-

3

Mortensen stated that they were "aware that the leak in the propane system was a building code violation" in January 2012.

In May 2012, months after identifying the under-sized tank, Sermon identified a second propane issue. Sermon pressure tested the propane system and identified multiple micro leaks in the pipes that were small enough to avoid detection in earlier tests. The School District hired Sermon to perform repairs on the micro leaks. Once underway, Sermon's repair work revealed that none of the joints in the system were holding enough pressure, thus increasing the expected costs of repair. Ryan Berrett and Holden discussed ongoing propane issues with the board at a May 17, 2012 board meeting. Sermon later completed the propane system repairs by August 2012, at a total cost of $36,056.07.

Following the May 17, 2012 board meeting, Kerns resigned his position as the School District's superintendent. The parties dispute the reason behind Kerns' departure. According to Kerns, he voluntarily resigned and tendered his resignation to the board in a separate executive session of the May 17, 2012 board meeting. Kerns asserted that he resigned for personal health concerns. Ryan Berrett stated in an affidavit that Sherry Mead, a board member, told him that the School District terminated Kerns because he "ignored safety issues" relating to the propane system. Kerns stayed on as interim superintendent until the School District hired a replacement in July 2012.

On June 22, 2012, Ryan Berrett published a Facebook post detailing frustrations with Kerns and the School District. The post appears to criticize the School District and includes a derogatory statement regarding Kerns. The post refers to Kerns as "chuckles the pretend superintendent." Several students and parents in the community saw the post. Haight-Mortensen also saw the post and sent a copy to Kerns. Kerns confronted Ryan Berrett about the post and asked him to remove it. The parties dispute the content of this confrontation. Kerns stated that, when he asked Ryan Berrett to remove the post, Berrett called him a "fucking asshole." Conversely, Ryan Berrett asserted that he never "cuss[ed] at Kerns." Ryan Berrett subsequently deleted the post.

The events that followed the Facebook post are also disputed by the parties. In his affidavit, Kerns stated that he addressed the Facebook post with the rest of the board at its next meeting. Kerns further asserted that the board members determined that Ryan Berrett's Facebook post violated the School District's policy, and given his at-will employment status, termination

4

was appropriate. Ryan Berrett asserted that he was fired by Kerns in retaliation for Kerns losing his own job due to "ignoring code violations and safety issues associated with the propane tank."

On June 27, 2012, Ryan Berrett received a letter terminating his employment with the School District. Ryan Berrett's termination letter identifies insubordination and verbal abuse to School District personnel through social media as grounds for termination.

## B. Lanie Berrett

The School District hired Lanie Berrett as a lunchroom cook in July 2006. She was subsequently promoted to lunchroom supervisor in 2009. Like Ryan Berrett, Lanie Berrett was also an "at-will" employee. In June 2010, Lanie Berrett entered into a residential lease agreement with the School District to rent a trailer from her employer. The lease provided a monthly rent of $350, but the School District only charged the Berretts $50 a month, allowing the couple to work off the rest of the rent each month. In the spring of 2012, prior to the Berretts' discharge, the School District discontinued the Berretts' rental discount. Kerns stated that the School District discontinued this working arrangement because auditors informed the School District it may affect Ryan Berrett's disability status.

In her role as lunchroom supervisor, Lanie Berrett managed kitchen operations, submitted documentation to the state, and controlled the lunchroom budget. Woods, the district business manager, worked with Lanie Berrett on the lunchroom budget and reminded her annually to stay within the budget. The School District allocated $15,000 to assist in yearly budget overages in the lunchroom. Despite the overage assistance, the School District asserts that Lanie Berrett exceeded her budget from 2010 through 2012. Woods and Haight-Mortensen asserted that Lanie Berrett exceeded her budget and the overage protection by $22,890 in 2010; $17,612 in 2011; and $47,924 in 2012.

Lanie Berrett disputed this account, stating that she stayed within her budget as lunchroom supervisor. Further, Lanie Berrett asserted that she was never disciplined for any budget problems while she was employed at the School District. In her affidavit, Lanie Berrett stated that one month prior to her termination, she received a positive performance review from Kerns. However, Lanie Berrett later contradicts herself in her deposition, acknowledging that she did overspend the food service budget each year.

In June 2012, the School District discovered that Lanie Berrett had again exceeded her budget for the 2011–12 school year. The School District determined that Lanie Berrett's repeated

inability to conform to her budget requirement warranted termination. On June 27, 2012, Lanie Berrett received a letter terminating her employment with the School District. Lanie Berrett's termination letter identifies consistent budget overspending, failure to perform supervisory duties, and failure to follow her supervisor's direction as grounds for termination. Lanie Berrett stated that her termination "came as a surprise" because of her positive performance evaluations from Kerns.

### C. Procedural History

#### 1. Federal Court

On December 20, 2012, the Berretts filed a complaint and demand for a jury trial in federal district court alleging violations of the Americans with Disabilities Act, the Fair Housing Act, Idaho's Whistleblower Act, and wrongful termination in violation of public policy. The federal district court granted summary judgment to the School District on all of the Berretts' claims and entered a final judgment on September 30, 2014. The Berretts appealed, and on March 17, 2017, the Ninth Circuit Court of Appeals affirmed the district court on all of the Berretts' federal claims, but remanded the case back to the district court on the Whistleblower Act and termination in violation of public policy claims. Specifically, the Ninth Circuit found that the district court erred in granting the School District's summary judgment motion because Ryan Berrett established a prima facie case of retaliatory discharge under the Whistleblower Act. Further, the Ninth Circuit affirmed the federal district court's decision finding that Lanie Berrett did not engage in any protected activity that afforded her protection under the Whistleblower Act. However, the Ninth Circuit found the district court failed to address whether Lanie Berrett sufficiently raised a common law claim for termination in violation of public policy—that is, firing Lanie Berrett in retaliation for Ryan Berrett's protected whistleblower activity—and that the district court should consider on remand whether this claim also survives summary judgment. After the federal district court declined to exercise jurisdiction over the remaining state law claims and dismissed the case without prejudice, the Berretts filed a complaint in Jefferson County District Court on May 9, 2017.

#### 2. State Court

The Berretts' subsequent state district court complaint and demand for a jury trial was a bit unorthodox in that it does not set forth the allegations in the document itself, but rather attached their prior federal complaint to the document and simply incorporated the allegations by

6

reference. The Berretts' new complaint sought relief based on the School District's conduct "alleged herein to be in violation of the relevant statutes and public policy." The parties then filed cross-motions for summary judgment accompanied by affidavits, deposition transcripts, and memoranda of support. In their motion for partial summary judgment, the Berretts argued that the Ninth Circuit's memorandum became "the law of the case," ensuring them a trial on the merits of their state law claims. On November 17, 2017, the district court granted summary judgment for the School District and denied partial summary judgment for the Berretts. The district court found that the law of the case doctrine did not apply, allowing the district court to make an independent evaluation of the facts before it. Regarding the Berretts' state law claims, the district court found that Ryan Berrett did not qualify for protection under the Whistleblower Act because he did not engage in protected activity. Further, the district court was unwilling to extend Idaho's public policy protections to Lanie Berrett as a third party spouse of an alleged whistleblower. Thereafter, the Berretts filed a motion to reconsider. The Berretts' motion for reconsideration asserted that the district court erred in failing to apply the law of the case doctrine, arguing that the Ninth Circuit's decision entitled them to a jury trial on their claims and precluded the state district court from granting summary judgment. Additionally, the Berretts argued that the district court erred in granting summary judgment on the state law claims given the factual disputes.

Following the Berretts' motion for reconsideration, the district court entered an order denying the Berretts' motion regarding the Whistleblower Act and public policy claims. The district court granted the Berretts' motion for reconsideration on the federal claims they listed in their new state district court complaint. Thereafter, on August 1, 2018, the district court entered a final judgment for the School District and dismissed all of the Berretts' claims with prejudice. The Berretts timely appealed.

## II.    STANDARD OF REVIEW

Whether the law of the case doctrine applies is a question of law upon which this Court exercises free review. *State v. Hawkins*, 155 Idaho 69, 71, 305 P.3d 513, 515 (2013).

Appeals from an order granting summary judgment are reviewed de novo, and this Court's standard of review is the same standard applied by the district court. *Trotter v. Bank of N.Y. Mellon*, 152 Idaho 842, 845–46, 275 P.3d 857, 860–61 (2012). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if

7

any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The Court liberally construes all disputed facts and draws all reasonable inferences from the record in favor of the nonmoving party. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). The moving party carries the burden of proving the absence of a genuine issue of material fact. *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 123, 206 P.3d 481, 487 (2009).

## III. ANALYSIS

### A. The law of the case doctrine did not preclude the district court from considering the School District's motion for summary judgment.

Before addressing the merits of the district court's summary judgment decision regarding the Berretts' claims, we must address whether the Ninth Circuit's memorandum decision remanding the case back to the federal district court became the "law of the case." On appeal, the Berretts maintain that the Ninth Circuit's memorandum decision demonstrates the existence of genuine issues of material fact that precluded the state district court from granting summary judgment to the School District. Specifically, the Berretts assert that the Ninth Circuit's decision is now "the law of this case, [ ] res judicata, and must be followed."

The "law of the case" doctrine is well established in Idaho. *Swanson v. Swanson*, 134 Idaho 512, 515, 5 P.3d 973, 976 (2000). The doctrine requires that when an appellate court, in "deciding a case presented states in its opinion a *principle or rule of law necessary to the decision*, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal . . . ." *Regan v. Owen*, 163 Idaho 359, 363, 413 P.3d 759, 763 (2018) (emphasis added) (quoting *Suitts v. First Sec. Bank of Idaho*, 110 Idaho 15, 21, 713 P.2d 1374, 1380 (1985)). The underlying purpose of the doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit . . . ." *State v. Dunlap*, 155 Idaho 345, 375–76, 313 P.3d 1, 31–32 (2013) (quoting *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005)). In application, the doctrine functions like the doctrine of stare decisis. *Regan*, 163 Idaho at 363, 413 P.3d at 763. We address the application of the law of the case doctrine with respect to each of the Berretts' claims separately.

### 1. Ryan Berrett's Whistleblower Act claim

The Ninth Circuit ruled in its memorandum decision that the district court erred in granting the School District's motion for summary judgment on Ryan Berrett's Whistleblower Act claim. The Ninth Circuit held that "[Ryan] Berrett established a prima facie case of retaliatory conduct" sufficient to "create a genuine issue of material fact to avoid summary judgment." The Berretts essentially argue that the Ninth Circuit's language stating that Ryan Berrett "established a prima facie case of retaliatory conduct" is a pronouncement that became the law of the case on remand and precluded the district court from granting summary judgment. We disagree.

To begin with, the Berretts urge the Court to reconsider its position in *State v. McNeely*, 162 Idaho 413, 415–16, 398 P.3d 146, 148–49 (2017), wherein we held that we are not bound by the decisions of a lower federal court. *Id.* We will not address this argument. Even if we were to assume that the Ninth Circuit's memorandum decision was binding on this Court, the Berretts' reliance on the law of the case doctrine is misplaced.

The law of the case applies where an appellate court states a "principle or rule of law necessary to the decision." *Regan*, 163 Idaho at 363, 413 P.3d at 763. This Court has previously held that the law of the case doctrine applies to district court decisions following remand from an appellate court. *See Taylor v. Maile*, 146 Idaho 705, 709–10, 201 P.3d 1282, 1286–87 (2009); *Spur Prods. Corp. v. Stoel Rives LLP*, 143 Idaho 812, 815–16, 153 P.3d 1158, 1161–62 (2006). However, in those decisions, the appellate court stated specific principles of law that were to control the case on remand. These principles of law involved the elements that were necessary to determine a claim, and whether a particular party had standing to sue. *See, e.g.*, *Spur Prods. Corp.*, 143 Idaho at 815–16, 153 P.3d at 1161–62 (holding that this Court's determination of the elements that were required in a breach of confidentiality attorney malpractice case constituted a principle of law that became the law of the case); *Taylor*, 146 Idaho at 709–10, 201 P.3d at 1286–87 (holding that this Court's determination that a party had standing to pursue its claims as a real party in interest was a principle of law necessary to the lower court's decision on remand).

Nothing in the Ninth Circuit's memorandum decision stated a principle or rule of law regarding Ryan Berrett's Whistleblower Act claim that had to be followed on remand. The Ninth Circuit certainly made no determination regarding any particular element of his claim (e.g., he engaged in a protected activity). Rather, the Ninth Circuit found that it was improper for the federal district court to grant summary judgment given the disputed facts in the record. Ryan

9

Berrett's assertion that this determination conclusively establishes his right to a jury trial simply goes too far. To be sure, a trial court on remand is not free to simply disregard an appellate court's determination that a genuine issue of material fact exists and precludes summary judgment. At the same time, such a pronouncement by an appellate court does not go so far as to preclude a trial court from re-considering a summary judgment ruling when presented with new evidence or new legal arguments. After all, orders granting and denying summary judgment are interlocutory. *Wickel v. Chamberlain*, 159 Idaho 532, 537, 363 P.3d 854, 859 (2015) (holding that until a final judgment has been entered, an order granting summary judgment is an interlocutory order and subject to reconsideration); *Am. Bank v. BRN Dev., Inc.*, 159 Idaho 201, 205, 358 P.3d 762, 766 (2015) (holding that orders denying summary judgment are interlocutory). Here, the factual record expanded before the district court. When the Berretts re-filed their case in state district court, the School District filed new affidavits for Kerns and Haight-Mortensen. These new affidavits state an additional fact—that the administration knew that the propane leak was a building code violation when the odors first appeared in January 2012. While it may have only been the addition of a single sentence, this fact is critical in both of the Berretts' claims.

The Whistleblower Act and wrongful termination in violation of public policy claims both require that the plaintiff engage in a protected activity, and that the protected activity be causally connected to the plaintiff's termination. *See Van v. Portneuf Medical Center*, 147 Idaho 552, 558, 212 P.3d 982, 988 (2009); *Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 578, 329 P.3d 356, 631 (2014). Here, the parties dispute whether Ryan Berrett engaged in a protected activity by reporting a building code violation to the School District. Thus, the additional fact presented to the state district court potentially affects the analysis in both of the Berretts' claims regarding whether Ryan Berrett engaged in a protected activity and whether their terminations were causally connected to the protected activity. Therefore, the law of the case does not apply and the district court was not precluded from conducting an independent summary judgment review.

### 2. Lanie Berrett's wrongful termination in violation of public policy claim

Like Ryan Berrett's claim, nothing in the Ninth Circuit's memorandum decision regarding Lanie Berrett's termination in violation of public policy claim stated a principle or rule of law for the district court to follow. *See Regan*, 163 Idaho at 363, 413 P.3d at 763. Instead, the

Ninth Circuit stated that the federal district court failed to address her claim, and "should consider on remand whether [her] claim also survives summary judgment." The law of the case doctrine is intended to avoid reconsideration of issues already decided. *See Dunlap*, 155 Idaho at 375–76, 313 P.3d at 31–32. Here, the Ninth Circuit did not decide any issues regarding Lanie Berrett's claim, and expressly called for the district court to reconsider whether her claim survives summary judgment. Further, the expanded record precluded the application of the law of the case to Lanie Berrett's claim in the same way that it precluded application to Ryan Berrett's claim above. Thus, the Ninth Circuit's memorandum decision is not the law of the case for Lanie Berrett's claim. Accordingly, the district court did not err in considering the School District's summary judgment motion.

## B. The district court erred in granting the School District summary judgment on Ryan Berrett's Whistleblower Act claim.

The district court ruled that Ryan Berrett failed to establish a claim of retaliatory discharge under the Whistleblower Act because reporting a propane leak in these circumstances did not qualify as a protected activity affording him protection under the statute. In reaching this conclusion, the district court analyzed the evidence indicating who knew about the propane problems at the School District, and the School District's response to the problems. The district court relied on evidence that demonstrated the administration and several staff members knew about the propane odor in January 2012. The district court found evidence of Ryan Berrett's communication with Kerns and the board regarding the continued propane system problems persuasive. The district court reasoned that even if Kerns told Ryan Berrett to "keep quiet" regarding the propane problems, the board was already aware of the problem and continued to fund service providers to reach a resolution. Ultimately, the district court concluded:

> It is beyond believable that an employee could be charged with solving a problem (even a building code or safety violation), provide regular progress reports to his employer, discuss the viability of proposed solutions with superiors, and then, after being fired, use those same activities to substantiate a claim of retaliatory discharge. This is especially true when the employee was charged with fixing a problem already known to the employer.

Further, the district court found that even if Ryan Berrett had engaged in a protected activity, he had not presented sufficient evidence to demonstrate a causal connection between the alleged protected activity of reporting a building code violation and the adverse employment action taken by the School District. In analyzing causation, the district court reviewed the

11

evidence showing the proximity in time between the alleged protected activity and Ryan Berrett's termination. The district court again found evidence of the School District's knowledge of the propane odors in January 2012 persuasive. Because Ryan Berrett was not terminated until approximately five months after the discovery of propane odors, the district court found that the adverse employment action taken against him was not causally connected to the alleged protected activity. Additionally, the district court found evidence of Ryan Berrett's Facebook post persuasive as another cause for Ryan Berrett's termination. Based on this evidence, the district court found that Ryan Berrett's termination had "nothing to do with the propane issue."

On appeal, Ryan Berrett's main argument is that a genuine issue of material fact exists with respect to both the protected activity and causation elements. To show an issue of material fact, he points to an alleged contradiction in a new affidavit filed by Kerns and previous statements from his deposition. Ryan Berrett asserts that the School District added one line to the affidavits of Kerns, Woods, and Haight-Mortensen in state district court, stating that each of them knew that the propane leak was a building code violation when the propane leak was discovered in January 2012. It should be noted that the record on appeal does not contain an updated affidavit from Woods. The record does show updates to Kerns and Haight-Mortensen's affidavits.

Idaho's Whistleblower Act "seeks to protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of law, rule or regulation." *Van*, 147 Idaho at 557, 212 P.3d at 987. Idaho Code section 6-2105(4) defines an employee's cause of action:

> To prevail in an action brought under the authority of this section, the employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse employment action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6-2104, Idaho Code.

I.C. § 6-2105(4). It is undisputed that, as defined by the act, Ryan Berrett is an "employee," the School District is an "employer," and that his termination constitutes an "adverse action." *See* I.C. § 6-2103.

To make out a prima facie case of retaliatory discharge under the Whistleblower Act, Ryan Berrett must show: (1) he was an employee who engaged in or intended to engage in protected activity; (2) his employer took adverse action against him; and (3) a causal connection

12

between the protected activity and the employer's adverse action. *Van*, 147 Idaho at 558, 212 P.3d at 988. The district court concluded that Ryan Berrett failed to demonstrate that issues of material fact existed regarding the first and third of these elements: (1) that he engaged in a protected activity; and (2) that his termination was causally connected to that protected activity. These two issues are discussed in turn.

### 1. There are genuine issues of material fact regarding whether Ryan Berrett engaged in a protected activity.

Ryan Berrett contends he engaged in a protected activity when he first notified the School District that the propane leak was a building code violation. He maintains that the School District could not have known from the smell of propane alone that a building code violation existed. The School District contends that it already knew of the propane leak and that it was a building code violation. Thus, the School District argues that Ryan Berrett's report of the propane leak is not a protected activity.

The Whistleblower Act defines protected activities as a good faith communication of a violation or suspected violation of law:

> (1)(a) An employer may not take adverse action against an employee because the employee . . . communicates in good faith a violation or suspected violation of law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States. Such communication shall be made at a time and in a manner which the employee gives the employer reasonable opportunity to correct the waste violation.

I.C. § 6-2104. Whether the employee communicated in good faith "is a question of fact, and summary judgment is appropriately only if, after viewing the evidence in light most favorable to the [non-moving party]," reasonable minds could only conclude that the communication was malicious, false, or frivolous. *Black v. Idaho State Police*, 155 Idaho 570, 573, 314 P.3d 625, 628 (2013).

The protected activity alleged in this case is reporting a building code violation based on the condition of the School District's propane system. Neither party disputes that a propane leak in a school gymnasium is a building code violation constituting a violation of law. The crux of the School District's argument is that despite the report of the building code violation, the affidavits of Kerns and Haight-Mortensen demonstrate that the School District already knew that the propane leak constituted a building code violation, and that it was actively working with Ryan Berrett to solve the problem. Thus, according to the School District, Ryan Berrett could not

13

have "blown the whistle" regarding a suspected violation of law because the School District and the board already knew about the violation.

The district court erred in granting summary judgment to the School District on this issue for two reasons. First, the notion that the School District knew that the propane leak constituted a building code violation from the first reported odors in January 2012 is a disputed fact in itself. While the School District contends that it knew immediately that a propane odor from the old gymnasium created a building code violation, the Berretts presented evidence that the first report of any violation first appeared in the quote from Sermon that Ryan Berrett gave to Kerns on March 12, 2012. Further, even though Kerns asserts in his affidavit that he knew the odors created a building code violation in January 2012, testimony from his deposition contradicts that assertion. In his deposition, Kerns stated that he did not know that the propane leak violated Idaho Code, and that he did not become aware of any code violations until "[Ryan Berrett] brought up the problem with the vaporizer."

The district court viewed this discrepancy in Kerns' statements as irrelevant, because even though exactly when the School District learned of a code violation is disputed, it is undisputed that it knew about general propane problems starting in January 2012. The district court found that if there was nothing to report regarding propane odors or a potential leak, then Ryan Berrett could not qualify for protection under the statute. Contrary to the School District's position, the Berretts assert that it was not publically known that the propane odors created a violation of law until Ryan Berrett reported the Sermon quote. The district court and the School District infer that any propane leak at a school would automatically be known to school administrators as a building code violation. However, the summary judgment standard requires all inferences to be drawn in favor of the Berretts. *Van*, 147 Idaho at 556, 212 P.3d at 986. Reasonable people could reach different conclusions as to whether the smell of propane, by itself, alerts an individual to a building code violation. *See id.*

Second, evidence of the School District's response to the propane problems does not bear on this Court's analysis under the Whistleblower Act. *Id.* at 559, 212 P.3d at 989. In *Van v. Portneuf Medical Center*, this Court addressed a similar argument. *Id.* In *Van*, the defendant employer also asserted that the employee did not engage in a protected activity, arguing that "incidents reported by [the employee] were investigated and resolved." *Id.* This Court rejected that argument, finding that the "reasoning is contrary to the Whistleblower Act—which applies

14

regardless of any action or inaction on the employer's part after the protected communication is made." *Id.* Here, the district court considered the School District's knowledge of the propane leak and response to remedy the propane leak as persuasive evidence that Ryan Berrett did not engage in a protected activity. However, *Van* held that "any action or inaction" of the School District after the protected communication is made is not relevant to whether the employee engaged in protected activity. *Id.* Therefore, the district court erred in relying on the School District's response to resolve the propane problem in granting summary judgment. Ryan Berrett demonstrated a genuine issue of material fact regarding whether his report of propane odors first alerted the School District to a building code violation. Thus, the district court erred in concluding that Ryan Berrett did not engage in a protected activity.

## 2. There are genuine issues of material fact regarding causation.

The district court also concluded that even if Ryan Berrett engaged in a protected activity, summary judgment was still proper because he cannot demonstrate that his termination was causally connected to his alleged protected activity. Ryan Berrett asserts that he was terminated in retaliation for reporting a building code violation and for statements he made in front of the board regarding the propane problems in May 2012. The district court favored the School District's proffered reason for termination—Ryan Berrett's June 2012 Facebook post—as a "more likely" reason for his termination. The district court erred in accepting the School District's reasoning.

As a general rule, "causation is an issue of fact for the jury and only rarely can the issue be determined on a motion for summary judgment." *Van*, 147 Idaho at 559, 212 P.3d at 989. In *Curlee v. Kootenai County Fire & Rescue*, this Court held that Idaho does not apply the *McDonnell Douglas* burden shifting analysis at the summary judgment stage in retaliatory discharge Whistleblower Act cases. 148 Idaho at 396, 224 P.3d at 463. The *McDonnell Douglas* burden shifting analysis allows defendants to articulate legitimate, non-retaliatory reasons for discharge once the plaintiff demonstrates a prima facie case. *Id.* If the defendant articulates a legitimate, non-retaliatory reason for discharge, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reason the defendant offers is a pretext for retaliatory conduct. *Id.* In *Curlee*, this Court held that because the *McDonnell Douglas* burden shifting analysis does not apply to the summary judgment stage, the district court erred by simply accepting the defendant's proffered reasons for firing the plaintiff. *Id.* Instead, this Court found

15

that those were material issues of fact to be tried by the jury. *Id.*; *Van*, 147 Idaho at 560, 212 P.3d at 990.

Here, drawing all inferences in favor of Ryan Berrett, a reasonable person could conclude that he was terminated in retaliation for reporting the building code violation. Similar to the defendant in *Curlee*, the School District presents a non-retaliatory reason for discharging Ryan Berrett based on his Facebook post. However, because the *McDonnell Douglas* burden shifting analysis does not apply to summary judgment, this non-retaliatory reason cannot be considered when deciding whether to grant summary judgment. *Curlee*, 148 Idaho at 369, 224 P.3d at 463.The district court also reasoned that "the proximity in time between the protected activity and the adverse employment action" is relevant to the analysis. Specifically, the district court pointed to the five month gap between the early reports of propane odors and Ryan Berrett's termination as evidence that the termination was not causally connected to the propane leak. Proximity in time is relevant to the analysis for causation, but it is not dispositive. *See Van*, 147 Idaho at 560, 212 P.3d at 990. In *Van*, this Court determined that summary judgment was inappropriate even where a number of the employee's protected activities occurred years before his termination. *Id.* Therefore, the five month gap here is not sufficient in itself to demonstrate a lack of causation. Therefore, the district court erred in granting summary judgment on this basis.

Because we reverse the district court's grant of summary judgment, we do not reach the merits of Ryan Berrett's judicial estoppel and judicial notice arguments. *See Curlee*, 148 Idaho at 400, 224 P.3d at 467 (declining to consider additional issues raised on appeal after finding the district court erred in granting summary judgment).

## C. The district court did not err in granting the School District summary judgment on Lanie Berrett's termination in violation of public policy claim.

Lanie Berrett contends that the district court erred in granting summary judgment for the School District on her termination in violation of public policy claim. Her principal argument is that the district court erred in refusing to extend Idaho's public policy protection to the spouse of a whistleblower. Specifically, she argues that the district court erred "by focusing on the language of the [Whistleblower] statute and not on public policy." We disagree.

Under Idaho law, "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons why the employee may be discharged, the employee is [at-will]." *Venable*, 156 Idaho at 578, 329 P.3d at 631 (internal quotation marks

16

omitted). An at-will employee may be terminated by his or her "employer at any time for any reason without creating liability." *Id.* (quoting *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 176, 75 P.3d 733, 737 (2003)). At-will employees, however, are not absolutely barred from making wrongful discharge claims. *Id.* Idaho recognizes a narrow exception when the employer's motivation for the termination "contravenes public policy." *Id.* (quoting *Bollinger v. Fall River Rural Elec. Co-op.*, 152 Idaho 632, 640, 272 P.3d 1263, 1271 (2012)).

Under the common law, a termination contravenes public policy only where an employee is terminated for engaging in some protected activity. *Id.* Protected activities include: "(1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges." *Bollinger*, 152 Idaho at 640, 272 P.3d at 1271. The purpose of the exception is to "balance the competing interests of society, the employer, and the employee in light of modern business experience." *Crea v. FMC Corp.*, 135 Idaho 175, 178, 16 P.3d 272, 275 (2000). "[T]o bring a successful claim under the public policy exception, an employee must show that she was engaged in a legally protected activity and that there is a causal relationship between her engagement in the protected activity and her termination." *Id.* The exception must be drawn narrowly, for if it is not narrowly construed, "it could eviscerate the rule." *Id.*

In determining whether an employee engaged in a protected activity, this Court analyzes "(1) whether there is a public policy at stake sufficient to create an exception to at-will employment, and (2) whether the employee acted in a manner sufficiently in furtherance of that policy." *Id.* (quoting *Bollinger*, 152 Idaho at 640, 272 P.3d at 1271). The claimed public policy generally must be rooted in "case law or statutory language." *Edmondson*, 139 Idaho at 177, 75 P.3d at 738. Determining what constitutes public policy sufficient to protect an at-will employee is a question of law. *Van*, 147 Idaho at 561, 212 P.3d at 991. Once the court defines the public policy, the question of whether the public policy was violated is one for the jury. *Id.*

This Court has recognized several public policy protections in the past.

The public policy exception has been protected in Idaho on several occasions. *E.g.*, *Watson v. Idaho Falls Consol. Hosps., Inc.*, 111 Idaho 44, 720 P.2d 632 (1986) (protecting participation in union activities); *Ray v. Nampa Sch. Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991) (*protecting reports of electrical building code violations*); *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981 (1996) (protecting compliance with a court issued subpoena). This Court has also indicated that the public policy exception would be applicable if an employee

17

were discharged, for example for refusing to date her supervisor, for filing a [workers'] compensation claim, or for serving on jury duty. *Sorensen [v. Comm Tek, Inc.]*, 118 Idaho [664] at 668, 779 P.2d [70] at 74 [(1990)] (citations omitted).

*Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 208, 61 P.3d 557, 565 (2002) (emphasis added).

Here, Lanie Berrett alleges that her termination violates the legislative intent provision of the Whistleblower Act. The provision states:

> The legislature hereby finds . . . that government constitutes a large portion of the Idaho work force and that it is beneficial to the citizens of this state to protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer[.]

I.C. § 6-2101. She argues that in order to give effect to this intent, there must be a cause of action for the wrongful termination of the spouse of a whistleblower or else employers will be able to indirectly force an employee to forego the protected activity. In other words, if the spouse is not protected from wrongful termination, then the protections of the Whistleblower Act become meaningless. The problem with this argument is that Lanie Berrett is arguing that the Court should recognize a cause of action where the plain language of the statute does not provide one. We will not ignore or re-write the plain language of a statute simply to reach a more desirable result. *State v. Osborn*, 165 Idaho 627, 449 P.3d 419, 423 (2019).

The Whistleblower Act provides a statutory cause of action and remedies to government employees alleging wrongful termination. *See* I.C. § 6-2101. This Court recently explained that the Whistleblower Act is intended to be the exclusive remedy for government employees and that it precludes common law causes of action. *See Eller v. Idaho State Police*, 165 Idaho 147, 155, 443 P.3d 161, 169 (2019). There is nothing in the plain language of the Whistleblower Act itself which protects the spouse of a whistleblower. Allowing a common law cause of action outside the Whistleblower Act would undercut the Idaho legislature's attempt to create an exclusive wrongful termination remedy for aggrieved government employees.

A Texas court expressed similar concerns in recognizing common law causes of action where the legislature had expressly acted to create a statutory remedy. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215–16 (Tex. 2000). In *O'Bryant*, the court reasoned that the state legislature had been "active in crafting whistleblower statutes," and that the adoption of a general common law whistleblower cause of action would "undercut" the legislature's attempt to craft a

18

specific and distinct statutory whistleblower cause of action. *Id.* The same concerns of undercutting the legislature expressed in *O'Bryant* are present here. The district court properly granted summary judgment in favor of the School District.

## D. The district court's exclusion of hearsay

Finally, the Berretts contend the district court erred in excluding statements from Sherry Mead ("Mead"), a School District board member, as inadmissible hearsay when considering their motion for reconsideration. Because we have determined that the district court erred in granting summary judgment on Ryan Berrett's Whistleblower Act claim, this issue of admissibility is moot for purposes of summary judgment. Nonetheless, because this case will be remanded to the district court, we provide guidance on the issue of admissibility moving forward. Mead's statement is an admission by a party opponent under I.R.E. 801(d)(2). As such, it is not hearsay and is admissible evidence.

The Berretts maintain that the day after Ryan Berrett and a Sermon representative spoke to the board about the continuing propane problems at the School District, Mead told the Berretts that the School District terminated Kerns because he "ignored the safety issue." The Berretts support this assertion with Ryan Berrett's affidavit and a note written on his calendar mentioning the conversation. The Berretts allege the statement qualifies as an admission by a party opponent under I.R.E. 801(d)(2). Specifically, the Berretts argued the statement is an admission by the School District's agent acting within the scope of her employment or agency. We agree.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c); *Silicon Int'l Ore, LLC, v. Monsanto Co.*, 155 Idaho 538, 545, 314 P.3d 593, 600 (2013). Hearsay is generally inadmissible. I.R.E. 802. Statements are not hearsay under I.R.E. 801(d)(2) when the statement was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . ." I.R.E. 801(d)(2)(D). To assert evidence of an agency relationship under I.R.E. 801(d)(2)(D), foundation of "independent evidence of the agency relationship, i.e., evidence apart from the alleged agent's own statements, [is] necessary before the alleged agent's out of court declarations may be admitted." *Vreeken v. Lockwood Eng'r, B.V.*, 148 Idaho 89, 107, 218 P.3d 1150, 1168 (2009) (quoting *R Homes Corp. v. Herr*, 142 Idaho 87, 92, 123 P.3d 720, 725 (Ct. App. 2005)).

The record in this case contains evidence that Mead served as a board member for the School District at the time she made the statement. Both of the Berretts' affidavits state that Mead served on the board. Additionally, the record contains the minutes from at least six board meetings in which Mead was present. One of these meetings took place the day before Mead allegedly made the statement to Ryan Berrett. These records of Mead consistently attending board meetings, coupled with the Berretts' affidavits are enough to demonstrate a foundation of Mead's agency relationship with the School District. *Vreeken*, 148 Idaho at 107, 218 P.3d at 1168. Therefore, the evidence is admissible as a statement of a party opponent.

### E. Attorney fees and costs

Each party seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121. Attorney fees under this statute may be awarded to the prevailing party when an appeal is brought frivolously, unreasonably, and without foundation. I.C. § 12-121. Both parties raised legitimate questions for the Court to address, grounding their arguments in fact and law. Therefore, we decline to award attorney fees to any party on this basis.

The School District also seeks an award of attorney fees pursuant to Idaho Code sections 12-117 and 6-918A. The School District provides no argument in support of an award of fees under either of these statutes. The School District only provides one conclusory sentence, stating that the Berretts filed their appeal without making a legitimate showing of error. This Court will not consider an issue which is not supported by argument and authority in the opening brief. *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 559, 261 P.3d 829, 836 (2011). One conclusory statement is insufficient to support an award of attorney fees.

The School District and Ryan Berrett both seek attorney fees under the Whistleblower Act. Because this opinion does not yet resolve Ryan Berrett's claim, we decline to award attorney fees at this time. *Portfolio Recovery Assocs. v. MacDonald*, 162 Idaho 228, 235, 395 P.3d 1261, 1268 (2017). Instead, if either party ultimately prevails, then the district court may award that party attorney fees incurred in bringing this appeal. *Id.*

### IV.    CONCLUSION

The district court's decision is affirmed regarding Lanie Berrett's wrongful termination in violation of public policy claim, and remanded for further proceedings on Ryan Berrett's Whistleblower Act claim. The district court may consider an award of attorney fees incurred on

appeal to the prevailing party. Given the mixed results of this case, no costs will be awarded to any party.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.