# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48160

MARY C. EICH )
)
    Plaintiff-Counterdefendant, )
    Appellant, )
)
vs. )
)
THE WILBUR J. EICH AND )
HENRIETTA C. EICH REVOCABLE, )   **Idaho Falls, September 2021 Term**
Greg Eich and Steve Eich, trustees )
)   **Filed: October 22, 2021**
    Defendants-Counterclaimants )
    Respondents. )   **Melanie Gagnepain, Clerk**
_____ )
)
THE REVOCABLE WILBUR EICH )
TRUST, )
)
    Third-Party Plaintiff, )
)
vs. )
)
PAT CURREN, )
)
    Third-Party Defendant and )
    Involuntary Plaintiff. )
_____ )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. Steven Boyce, District Judge.

The district court judgment is affirmed.

Thomsen Holman Wheiler, PLLC, Idaho Falls, attorneys for Appellant. Michael Whyte argued.

Brown & Hiser, Laramie, Wyoming, attorneys for Respondents. Galen Woelk argued.

_____

BEVAN, Chief Justice.

Mary C. Eich appeals from a district court judgment ordering her to vacate property owned by the trustees of the Wilbur Eich and Henrietta Eich Revocable Trust (the "Trust"). In 2015, Mary filed an action seeking to quiet title to 2.5 acres of an 80-acre tract of real property owned by her father, who held title to the property as trustee of his Trust. Mary alleged that her parents had gifted her the 2.5 acres with the intent that she build a home and reside there for the rest of her life. On cross-motions for summary judgment, the district court ruled that there was no valid transfer between Mary and her parents, but permitted Mary to pursue an equitable claim of promissory estoppel. Following a bench trial, the district court ruled in favor of Mary and that she had a year to obtain Teton County's approval to partition the 2.5 acres from the remaining Trust property. If she could not do so within the time prescribed, the Trust would have to pay Mary $107,400 for the value of improvements she had made on the land plus her reasonable relocation costs, and Mary would have to vacate the property. Mary worked for several years to separate the 2.5 acres from the remaining Trust property to no avail. In August 2019, the Trust moved to compel enforcement of the district court's alternative remedy and for entry of final judgment. In January 2020, a newly assigned district court judge granted the Trust's motion and entered a declaratory judgment ordering the Trust to pay Mary $107,400, plus reasonable relocation expenses, and for Mary to vacate the property. Mary timely appealed, arguing that the newly assigned district court judge abused his discretion by deviating from the original judge's equitable remedy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

In early 2015, Mary C. Eich filed an action to quiet title to 2.5 acres surrounding a cabin she built on Trust property in accordance with agreements she alleged her parents made with her in 2002 and 2003 in their capacity as trustees of the Revocable Wilbur Eich Trust. After approximately two years of discovery and motion practice, the matter came before the district court as a bench trial. Following the trial, the district court entered the following findings of fact that are undisputed on appeal.

At the time of trial, Mary was 56 years old and lived in Teton County, Idaho, residing in the cabin located on the real property that is the subject of this dispute. Mary is in a long term, committed relationship with Pat Curren who was 84 years old at the time of trial. Mary and Pat have two children. Mary's youngest daughter is autistic; she is classified as non-verbal, subject to sensory overload, and requires care 24 hours a day, which is almost entirely provided by Mary.

2

Mary suffered a head injury as a child, and because of challenges related to that injury, Mary's parents, Wilbur and Henrietta Eich, tried to assist her and help her in various ways over the years.

The Eichs originally owned a one-half undivided interest in a roughly 160-acre parcel of land in Teton County, Idaho. They quitclaimed that interest to themselves as trustees of the Trust in 1995. The trustees of the Lunceford Family Trust owned the other one-half undivided interest. With permission from the respective co-owners, both families built cabins on the land. The Eichs constructed a family cabin in the 1980s, where they permitted Mary, Pat and their daughter (before the second daughter was born), to live at least part of the year. Wilbur informed his family members that he intended to someday divide the land so that each of his children could build their own cabins.

In 2003, Mary proposed to her parents that she build a cabin near the family cabin in which her family could reside. Wilbur and Henrietta signed three separate documents, which each demonstrated their intent to give Mary land to construct a cabin. The third document stated, "A proper map describing the building site, which will include two and one half acres, is forthcoming." It also provided that Mary would "maintain and pay her proportionate share of taxes, etc." Mary began construction of her cabin (Mary's cabin) in 2004, and it was mostly completed by the winter of 2005. Mary and her family resided in Mary's cabin since at least 2005 and continued to reside there as of the date of trial. Neither Mary nor her family ever paid financial consideration of any kind to the Trust for their right to live on the premises, nor were they asked to do so.

In 2009, because of a dispute over division of the Trust Property with the Lunceford Trust, the Trust launched a partition action. The final judgment reduced the Trust's property ownership from 160 acres to 80 acres and required the Trust to utilize its one-time land split exception to Teton County's subdivision regulations to carry out the division with Lunceford. Due to the use of this one-time exception, the final resolution of the Lunceford dispute led to the Trust's inability to further subdivide the Trust property and provide each of Wilbur and Henrietta's children with their own separate parcels.

The district court determined the only manner in which the Eich property could be further divided would be either: (1) through compliance with Teton County's Zoning Ordinance, as codified in Titles 8 and 9 of its Code, Rev. 9.09.2013; or (2) through use of a boundary-line adjustment under Title 9 of the Zoning Ordinance, and only if the adjacent property owners were willing to agree.

3

### B. Procedural Background

On February 17, 2015, Mary initiated this action against the Trust seeking a declaratory judgment and decree that she is the owner of a cabin located on 2.5 acres of property currently owned by the Trust. Mary also filed a notice of *lis pendens*. On August 25, 2015, Mary filed an amended complaint. The Trust answered the amended complaint and filed a counterclaim seeking Mary and her family's ejectment from the property and for unjust enrichment because she never contributed to the expenses associated with the 2.5 acres.

Both parties moved for summary judgment. The district court entered a memorandum decision on the cross-motions for summary judgment. The district court denied Mary's legal claims of ownership of the subject property but preserved her equitable claims for trial. After a two-day bench trial, the district court entered findings of fact and conclusions of law on April 19, 2017. The court granted Mary's equitable claim for relief under the doctrine of promissory estoppel, fashioning the following relief: (1) that Mary had one year from the April 19, 2017, decision to obtain a legal partition the 2.5 acres from the remaining Trust property; or (2) if Mary could not procure a partition in that time, Mary would have to vacate the Trust property and the Trust would pay her $107,400 for the value of her improvements on the property, plus her reasonable relocation expenses. Mary moved the court to reconsider its decision on the equitable remedies awarded. On July 3, 2017, the district court entered its memorandum decision and order on reconsideration, reaffirming the previously ordered remedies and providing Mary until August 31, 2018 to obtain a legal partition.

On October 17, 2017, the district court held a hearing to consider the Trust's motion for entry of judgment. While we do not have a copy of the written motion in the record, the hearing transcript reflects that the Trust asked the district court to enter a judgment so the trustee could determine whether to appeal the district court's orders granting Mary's equitable claim for relief. The district court advised that it intended to give Mary a full year before issuing any rulings: "My hope would be – was and still is, is that [Mary] can get everything in place that she needs to within the one year, and if she doesn't, and it's not – and certainly a lack of good faith could play a role in how the Court sees this. But assuming everybody is acting in good faith, if she doesn't get it done within a year, then I've issued the alternative as to what kind of judgment I'm going to enter."

Mary subsequently encountered several delays in her efforts to separate the 2.5 acres from the remaining Trust property. On June 8, 2018, Mary filed a motion for further reconsideration

4

and further relief related to the difficulties. Mary advised the district court that Teton County had denied her initial application for a hardship variance and informed Mary that she would need to apply for a two-lot subdivision. Mary then applied for a two-lot subdivision, which Teton County rejected after questioning whether Mary had standing to pursue a lot subdivision on behalf of the Trust. Mary requested the court clarify its earlier order and specify that she had the necessary authority to pursue the two-lot subdivision with Teton County. The Trust objected, emphasizing the time that Mary already had to pursue the partition and the fact that it did not believe Mary could complete the partition by the August 31, 2018 deadline.

On June 19, 2018, the parties argued several motions, including Mary's motion for further reconsideration or further clarification. The original judge did not extend Mary's deadline at that time, but he made it clear he felt the partition option was "the most equitable resolution" with the monetary compensation being a "fallback." The judge explained that he would likely be amenable to an extension so long as he was convinced Mary was proceeding in good faith. The district court then issued an order specifying that Mary had full standing to apply to Teton County to sever her residence and the surrounding 2.5 acres from the Trust's remaining acreage.

On August 14, 2018, Mary filed a second motion for further reconsideration and/or further relief, asking the court to extend the time Mary had to complete the application process with Teton County. The Trust opposed Mary's motion and moved to compel enforcement of the district court's order and for entry of declaratory judgment, ordering the Trust to pay Mary and requiring Mary to vacate the property. The original judge ruled from the bench and granted Mary additional time, stating, "I think that [Mary's counsel] has acted in good faith. I think it has taken longer than all of us wanted to. I think that the reasons it's taken longer are beyond the – beyond the control of the people involved in this case."

In the summer of 2018, a dispute arose between the parties as to the exact location of the 2.5 acres. This dispute was not resolved until the district court entered an order designating the lot location on March 15, 2019. By this time, a different district court judge had been assigned to the case.

In May 2019, Mary attended the Teton County Planning and Zoning meeting to obtain preliminary approval of the proposed two-lot subdivision. The day before the meeting, the Trust

sent a letter[1] outlining various concerns with the development agreement Mary submitted. Mary's application was approved to proceed to the Teton County Commission, but the parties were advised to try and reach a resolution on the Trust's concerns prior to seeking preliminary and final plat approval from the County Commission. The parties worked on a revised agreement that Mary submitted to the County on September 2, 2019. Mary requested that her preliminary plat approval be placed on Teton County's September docket, but, due to a County error, it was not placed on the docket until November 2019.

Mary sought to vacate the November hearing and a December hearing on her application because she was in California caring for her ailing husband and wanted to attend the hearing in person. Mary's stated concern was "that she couldn't be there; and she didn't want this proceeding, not trusting the system and trusting [her attorney] to be able to get it through and work toward the final resolution."

In the midst of Mary's revised applications, on August 28, 2019, the Trust filed another motion to compel enforcement of the order and for entry of final judgment. On January 17, 2020, the district court, with the newly assigned judge presiding, granted the Trust's motion. Given the time that had passed since the original order provided Mary one year to sever the 2.5 acres from the remaining Trust property, the newly assigned judge ruled that Mary's time to obtain a variance on the Trust land had passed. The district court recognized that the Trust property had been encumbered throughout the protracted proceedings and highlighted that the law requires avoidance of unreasonable and unnecessary delays that result in prejudice. Thus, the district court entered a declaratory judgment ordering the Trust to pay Mary $107,400, plus reasonable relocation expenses, and for Mary to vacate the property. The court later entered a judgment to that effect.

Mary filed a motion for reconsideration, arguing that the court had overlooked or not given sufficient weight to the circumstances surrounding her efforts to complete the property division outlined in the district court's prior orders. The Trust opposed Mary's motion, arguing that just as Mary and her family had been affected by the economic ramifications of the court's decisions, so too had the Trust, which had not been able to develop, divide, contract for sale, sell or even finance and portion off its property for years because of the *lis pendens* that continued to encumber the

---

[1] The letter was not included in the record, but the Trust apparently questioned Mary's use of the term "developer" and raised concerns about her ability to encumber the remaining Trust property.

6

Trust property. On June 2, 2020, the district court entered a memorandum decision denying Mary's motion to reconsider. The newly assigned judge expressed that while he was sympathetic to Mary's situation in California, given the protracted nature of the litigation, and where a final judgment had been requested for such a long time, the court could not find that vacating the hearings for that purpose justified further delay.

Mary filed a timely notice of appeal to this Court.

## II. ISSUES ON APPEAL

1. Did the newly assigned district court judge abuse his discretion when he ordered that Mary could no longer pursue the partition of 2.5 acres from the Trust property?

2. Did the newly assigned district court judge incorrectly conclude that prejudice to the Trust could be presumed by the delay?

## III. STANDARD OF REVIEW

This Court reviews the district court's rulings on equitable remedies for an abuse of discretion. *Climax, LLC v. Snake River Oncology of E. Idaho, PLLC*, 149 Idaho 791, 794–95, 241 P.3d 964, 967–68 (2010) (citing *O'Connor v. Harger*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008)). To determine whether the district court abused its discretion, this Court applies a four-prong test: whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018).

## IV. ANALYSIS

**A.     The newly assigned district court judge did not abuse his discretion in imposing the alternative remedy from the district court's original order.**

The essence of the issue on appeal is whether the newly assigned district court judge abused his discretion by entering a judgment requiring Mary to vacate the Trust property in exchange for $107,400 rather than allowing Mary to continue her efforts to separate the 2.5 acres from the remaining Trust property. Mary argues that in doing so the newly assigned judge "altered the path" of the original judge's equitable remedy.

Mary suggests that the original judge clearly intended that she be permitted to complete the process of partitioning the 2.5 acres from the rest of the Trust property, thus, the newly assigned judge abused his discretion when he granted the Trust's motion to implement the alternative remedy that she receive monetary compensation. Mary claims that the newly assigned judge

7

proceeded without sufficient understanding of the original judge's plans and expectation that she be provided a full opportunity to separate her property from the Trust property. The Trust counters "[Mary's] premise on appeal is that because a particular sitting District Court Judge did something contrary to what she thinks a previously seated prior sitting [sic] District Court Judge in the same Court would not have done, she is permitted to allege that the presently seated Judge abused his discretion in resolving the prior orders of the District Court."

After the trial of the case, the original district court judge granted Mary several extensions to complete the partition based on his finding that Mary was proceeding in good faith. Because the original judge had expressed that he would allow Mary to proceed with the severance of the 2.5 acres so long as she continued to take good faith steps to pursue the remedy, Mary submits that "[the newly assigned judge] should not have treated this as a matter of discretion." That said, there is no indication that the original judge would have continued granting extensions in perpetuity.

The Trust suggests that "[b]ut for [Mary] being afforded the first right in time to resolve the condition precedent, the [d]istrict [c]ourt did not elevate one proposed outcome over the other, or provide any additional preference for the entry of one proposed judgment over the other." But this claim is disingenuous. The original judge made it clear he felt the partition option was "the most equitable resolution" with the monetary compensation being a "fallback." Still, that alone does not mean the newly assigned judge abused his discretion by imposing the monetary remedy.

Mary argues the newly assigned judge abused his discretion in "loading all the delays" onto Mary and categorizing those delays as "unnecessary and unreasonable." Mary cites several delays that were caused by external factors including: (1) the Trust's objection to the location of the planned 2.5 acres; (2) Teton County's rejection of the applications for a two-lot subdivision because it questioned Mary's authority to act on behalf of the Trust; (3) Teton County's erroneous belief that it needed additional documents before the matter could be placed on the September or October 2019 hearing calendar; and (4) the Trust's objections to the development agreement. Mary also suggests that the newly assigned judge appeared to heavily weigh the fact that she vacated the November 2019 hearing, which she only did to care for her hospitalized husband, and autistic, non-verbal child who was subject to sensory overload, in California. Mary claims that up until that point, she had been working within and through the Teton County process to get the subdivision completed and the newly assigned judge incorrectly found Mary's cancellation of that hearing was unreasonable and unnecessary.

8

Mary's arguments are speculative because there is no way to know how much longer it would have taken to get her application approved, or that it ever would have been approved. There is no way to know how long Mary would need to remain in California to care for her husband. And, most importantly, there is no way to know what the original judge would have done had he remained on the case. The crux of Mary's argument is that "[the newly assigned judge] abused his discretion by removing [her] opportunity to continue the path that had been started, and was working on in good faith as directed by [the original judge]." Simply because a judge exercises discretion in a way that *might* have differed from another district judge does not transform that decision to an abuse of discretion.

The Trust maintains that the newly assigned judge simply followed the law of the case and entered a judgment based on the remedy already pronounced by the original judge. The law of the case doctrine is well settled in Idaho and is utilized to "maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. . . ." *Berrett v. Clark Cnty. Sch. Dist. No. 161*, 165 Idaho 913, 922, 454 P.3d 555, 564 (2019) (quoting *State v. Dunlap*, 155 Idaho 345, 375–76, 313 P.3d 1, 31–32 (2013)). Mary counters that in applying the law of the case doctrine, the newly assigned judge should not have imposed a monetary judgment and stopped her from pursuing the partition because the original judge had prioritized allowing Mary to complete the partition process. We disagree.

The original judge initially created two alternative remedies: (1) that Mary had one year to partition the 2.5 acres from the remaining Trust property; or (2) if Mary could not obtain a partition in that time, Mary would have to vacate the Trust property and the Trust would pay her $107,400. The third prong capsulizing a court's exercise of discretion requires only that the court act "consistently with the legal standards applicable to the specific *choices* available to it." *Lunneborg*, 163 Idaho at 867, 421 P.3d at 198 (emphasis added). The newly assigned judge had two choices and he did not abuse the discretion available to him by choosing one that required that Mary be paid cash rather than remain on the Trust property while her efforts to subdivide the property continued to linger on. The Trust had been seeking finality on the case since the original judge entered the initial order, which anticipated the property could be divided by April 2018. The newly assigned judge entered his order imposing the alternative remedy in January 2020, more than twenty months after the initial deadline had passed and nearly five years after Mary's initial complaint was filed. Even though all the delays were not attributable to Mary, there is a strong

9

public policy in favor of finality of litigation. *See Roberts v. Bonneville Cnty.*, 125 Idaho 588, 593, 873 P.2d 842, 847 (1994); *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 652, 827 P.2d 656, 665 (1992). The newly assigned judge did not abuse his discretion in bringing finality to this litigation by granting the Trust's motion to impose the alternative remedy available since the original judge entered the initial findings of fact and conclusions of law.

**B.      The newly assigned judge did not erroneously conclude that the delay presumptively prejudiced the Trust.**

In the newly assigned judge's order, he recognized that the Trust's property had been encumbered throughout these proceedings and that the law requires avoidance of unnecessary and unreasonable delays that result in prejudice. *Roberts v. Verner*, 116 Idaho 575, 578, 777 P.2d 1248, 1251 (Ct. App. 1989) ("prejudice may be presumed to flow from unexcused and unreasonably delay"). Given the time Mary had to pursue a partition of the property, the newly assigned judge ultimately determined that Mary's time to obtain a variance had passed.

Mary contends the newly assigned judge incorrectly concluded that prejudice to the Trust could be presumed by the claimed unnecessary and unreasonable delay because: (1) the delays were reasonable and excused, and not all related to Mary; and (2) even if there were a question over the reasonableness of the delays, the newly assigned judge should not have presumed prejudice to the Trust. Mary also contends it is disingenuous for the Trustees to complain about prejudice caused by delays when they were the source of some of those delays.

First, we note that prejudice was not required for the newly assigned judge to exercise his discretion and impose the alternate remedy created by the original judge. As noted above, the policy of finality in litigation supports the newly assigned judge's exercise of discretion here, with or without prejudice to the Trust. That said, the Trust cites several cases from California to argue that where a property owner's title to property is clouded by a *lis pendens* the property owner is presumptively prejudiced by an inability to deliver marketable title to that property. *See Cyr v. McGovran*, 142 Cal. Rptr. 3d 34, 39–40, (Cal. App. 2012) ("The recording of the *lis pendens* impaired the value of appellants' options because [they] could not deliver marketable title to the property.); *see also Farbstein v. Woulfe*, 269 P. 446, 447 (Cal. 1928), ("Indeed, the cloud upon their title during all of said time by reasons of the filing of a *lis pendens* at the time of the commencement of this action would constitute a prejudice if any were necessary to be shown."). Mary counters that these cases are distinguishable because the Trustees have presented no evidence

that they attempted to sell or develop the property that they were prevented from doing because of the current *lis pendens*. The Trust was not given a full opportunity to present evidence on this issue below because whether the Trust suffered prejudice was not a necessary precursor to the newly assigned judge's imposition of the original judge's alternative remedy. We recognize for future proceedings, however, that as a cloud on title (a fact which was conceded by Mary below and on appeal), a *lis pendens* is enough to provide evidence of prejudice.

## V. CONCLUSION

We affirm the district court's decision ordering Mary to vacate the property and for the Trustees to pay Mary $107,400. Costs are awarded to the Trust as the prevailing party on appeal.

Justices BRODY, STEGNER, ZAHN and Justice *pro tem* WATKINS, CONCUR.